FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

05 OCT 25 AM 10: 10

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| JACQUELINE HURT, | X | |
| | X | |
| Petitioner, | X | |
| | X | |
| vs. | X | No. 05-2540-Ma/P |
| | X | |
| REUBEN HODGE, | X | |
| | X | |
| Respondent. | X | |
| | X | |

ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Petitioner Jacqueline Hurt, Tennessee Department of Corrections prisoner number 264130, an inmate at the Mark H. Luttrell Correctional Center ("MLCC") in Memphis, filed a pro se petition pursuant to 28 U.S.C. § 2254 on July 22, 2005, along with an application for leave to proceed in forma pauperis. On the basis of the information set forth in the petitioner's affidavit and trust fund account statement, the motion to proceed in forma pauperis is GRANTED. The Clerk shall record the respondent as MLCC warden Reuben Hodge.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on ___10-26-05___

I.    STATE COURT PROCEDURAL HISTORY

On May 8, 2000, Hurt entered guilty pleas in the Shelby County Criminal Court to two counts of attempted first degree murder, one count of especially aggravated robbery, and one count of especially aggravated kidnaping. She was sentenced to twenty-five (25) years on each of the four counts, with the two attempted murder counts to run consecutive to each other and the remaining counts to run concurrent to each other but consecutive to the attempted murder counts, for an effective sentence of seventy-five (75) years. The Tennessee Court of Criminal Appeals affirmed Hurt's sentence. State v. Hurt, No. W2000-02193-CCA-R3-CD, 2001 WL 935465 (Tenn. Crim. App. Aug. 16, 2001), perm. app. denied (Tenn. Dec. 31, 2001).

Hurt filed a pro se petition pursuant to the then-current version of the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222, in the Shelby County Criminal Court on August 19, 2001. Counsel was appointed to represent Hurt and an amended petition was filed. That petition was summarily denied as time barred.[1] The petitioner filed a second petition for postconviction relief in November 2002. The postconviction court appointed counsel on that petition on November 21, 2002, and an

---

[1]    Although the postconviction court did, apparently, dismiss the petition on that basis, that conclusion would not have been appropriate, as the State conceded. Hurt v. State, No. W2004-00151-CCA-PC, 2004 WL 2479916, at *3. It is likely that the postconviction petition should have been dismissed as premature because the application for leave to appeal to the Tennessee Supreme Court on direct appeal was pending when the postconviction petition was filed.

amended petition was filed on April 24, 2003. The postconviction court held an evidentiary hearing on October 8, 2003 and, thereafter, denied the petition. The Tennessee Court of Criminal Appeals affirmed. <u>Hurt v. State</u>, No. W2004-00151-CCA-R3-PC, 2004 WL 2479916 (Tenn. Crim. App. Nov. 4, 2004), <u>perm. app. denied</u> (Tenn. Feb. 28, 2005).

The Tennessee Court of Criminal Appeals summarized the facts underlying the criminal charge as follows:

> On Thursday, April 15, 1999, at approximately four o'clock in the morning, the Defendant went to the apartment of the victim, Carnomas Manning. The Defendant knocked on Ms. Manning's door, and asked for some money the Defendant maintains was owed her by the victim. Ms. Manning responded that she did not have the money. The defendant then asked if she could come in for a drink of water. Ms. Manning allowed the Defendant into her apartment at this request. According to the victim's own testimony, the victim, who was seven months pregnant, sat down on the couch in the front room of the apartment and dozed off. She was awakened when she was hit by the Defendant in the side of the face by a quart size bottle of beer. The defendant immediately began to stab the victim with the broken beer bottle. According to the victim, the Defendant put a pillow over her head to muffle her screams, then opened the front door to look outside and see if anyone had heard the fighting. The Defendant shut the door, and at this point went into the kitchen and retrieved a butcher's knife. The Defendant then covered the victim with a bed linen, straddled the victim's stomach, and began stabbing her with the butcher's knife. When the victim stopped struggling, the Defendant tied the victim's hands together, and also bound her feet together. She then dragged the victim into her own bedroom and left her there. The Defendant testified that the above described altercation lasted about ten minutes. At this point, the Defendant left the victim and took a shower in the victim's bathroom while the victim lay helpless and bleeding on her bed. The Defendant also washed her clothes at the victim's apartment. When she got out of the shower, the Defendant noticed that the victim was struggling to free herself

from her binds. The Defendant tightened the ties on both the hands and feet of the victim, and then "hog-tied" the victim. The Defendant then placed a towel around the victim's neck, and two plastic bags over the victim's head, and secured them in place by wrapping a phone cord around the victim's neck. The victim testified that the entire time this was happening, the Defendant was talking to the victim.

The Defendant then put her cigarette out on the victim's face, and left the apartment. She returned only a few minutes later, took some money from the victim's purse, then left the apartment again. The victim worked to free herself when the Defendant left. However, the victim's terror had not yet ended. The Defendant returned to the apartment yet again. Upon returning to the apartment, the Defendant saw that the victim was again attempting to free herself. The Defendant took a meat cleaver and chopped into the victim's forearm, retied her, and then covered the victim with covers and went into the living room. During the entire ordeal, the victim's small children, ages two and three years old, were in the apartment. The victim testified that while laying on the bed, she could hear the Defendant in her living room picking up glass, and that she could hear her two children crying. The Defendant returned to the bedroom, and began talking to the victim. The Defendant informed the victim that she didn't like her and that she had been planning this for a while. The Defendant laughed at the victim and told her she wouldn't be "such hot stuff" anymore. The victim continued to try to talk to the Defendant. She asked the Defendant for some water. The Defendant returned with a glass of water, poured it all over the victim's body, and began whipping her with a belt. When the victim stopped moving, the Defendant retired to the living room to watch television with the children. The victim described in detail how she was struggling to breath [sic], to loosen herself, and "actually just to think". After a couple of hours, the Defendant returned to the bedroom, and fell asleep beside the victim. The victim continued to struggle to free herself, and after about two more hours, the victim was able to remove the tie that bound her hands and feet together. At approximately 10:50 am [sic], with her arms still tied and the bags still wrapped around her head, the victim managed to get to the front door, escape the apartment, and fled to the apartment manager's office. The property manager cut the cords from the victim's hands and the plastic from her face. After telling of her

4

ordeal, several maintenance men were called for
assistance. They proceeded to the victim's apartment.
Once they entered, they found the victim's two young
children in the living room, covered in blood, but
apparently unharmed. At this point the Defendant emerged
from the bedroom. The maintenance men held her in the
apartment until two uniformed officers arrived and took
her into custody. When arrested, the Defendant had $21.00
in cash, $20 of which she took from the victim's purse,
the victim's identification, and the identification of
the victim's deceased mother. On Friday, April 16, 1999,
the Defendant gave a typed written signed statement of
admission to this incident.

On May 8, 2000, the defendant entered pleas of
guilty to two counts of attempted first degree murder,
one count of especially aggravated robbery, and one count
of especially aggravated kidnaping, all Class A felonies.
She advised the court that she was entering the pleas to
attempted murder in her best interest pursuant to North
Carolina v. Alford, 400 U.S. 25 . . . (1970).

The trial court conducted a sentencing hearing on
August 14 and 31, 2000. The state presented the testimony
of five witnesses, including the victim. Information from
a neonatologist and a pediatrician indicated that the
victim's seven-month fetus was damaged during the attack
on the victim, resulting in the birth of a son with
cerebral palsy, significant brain damage, and orthopedic
problems.
The defendant testified in her own behalf and denied
statements she made in the typed confession. She stated
that she had been drinking continuously for several hours
prior to the incident. She stated that she did not
remember exactly what happened. She denied that she
intended to hurt the victim or her children; she just
wanted to get her money back. She acknowledged that she
had given her prior statement voluntarily. She later
acknowledged understanding that she had hurt the victim.
She admitted that she had hit the victim with a bottle.
She also acknowledged hitting her with her fist.

State v. Hurt, 2001 WL 935465, at *1-*2 (alterations in original).

II.  PETITIONER'S FEDERAL HABEAS CLAIMS

In this federal habeas petition, Hurt raises the
following issues:

1.  Whether she was denied her right to the effective assistance of counsel in violation of the Sixth Amendment; and

2.  Whether her guilty plea was unknowing and involuntary.

III. <u>ANALYSIS</u>

A.  <u>Waiver and Procedural Default</u>

Twenty-eight U.S.C. § 2254(b) states, in pertinent part:

(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

   (A)  the applicant has exhausted the remedies available in the courts of the State;  or

   (B)  (I)  there is an absence of available State corrective process;  or

      (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254. <u>E.g.</u>, <u>Granberry v. Greer</u>, 481 U.S. 129, 133-34 (1987); <u>Rose v. Lundy</u>, 455 U.S. 509, 519 (1982); Rule 4, Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"). A petitioner has failed to exhaust her available state remedies if she has the opportunity to raise her claim by any available state procedure. 28

U.S.C. § 2254(c); <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 477, 489-90 (1973).

To exhaust her state remedies, the petitioner must have presented the very issue on which she seeks relief from the federal courts to the courts of the state that she claims is wrongfully confining her. <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971); <u>Rust v. Zent</u>, 17 F.3d 155, 160 (6th Cir. 1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996). "'[T]he substance of a federal habeas corpus claim must first be presented to the state courts.'" <u>Id.</u> at 163 (quoting <u>Picard</u>, 404 U.S. at 278). A habeas petitioner does not satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief." <u>Id.</u>

Conversely, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." <u>Id.</u> When a petitioner raises different factual issues under the same legal theory she is required to present each factual claim to the highest state court in order to exhaust her state remedies. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pillette v. Foltz</u>, 824 F.2d 494, 496 (6th Cir. 1987). She has not exhausted her state remedies if she has merely presented a particular legal theory to

the courts without presenting each factual claim. <u>Pillette</u>, 824 F.2d at 497-98. The claims must be presented to the state courts as a matter of federal law. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982); <u>see also</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Moreover, the state court decision must rest primarily on federal law. <u>Coleman v. Thompson</u>, 501 U.S. 722, 734-35 (1991). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by this procedural default from seeking federal habeas review. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-88 (1977). However, the state-court decision need not explicitly address the federal claims; instead, it is enough that the petitioner's brief squarely presents the issue. <u>Smith v. Digmon</u>, 434 U.S. 332 (1978) (per curiam); <u>see also</u> <u>Baldwin v. Reese</u>, 124 S. Ct. 1347, 1350-51 (2004) (a federal habeas claim is fairly presented to a state appellate court only if that claim appears in the petitioner's brief).

8

When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits the state court from extending further consideration to them, the claims are deemed exhausted, but procedurally barred. <u>Coleman</u>, 501 U.S. at 752-53; <u>Teague v. Lane</u>, 489 U.S. 288, 297-99 (1989); <u>Wainwright v. Sykes</u>, 433 U.S. at 87-88; <u>Rust</u>, 17 F.3d at 160.

A petitioner confronted with either variety of procedural default must show cause for the default and that she was prejudiced in order to obtain federal court review of her claim. <u>Teague</u>, 489 U.S. at 297-99; <u>Wainwright v. Sykes</u>, 433 U.S. at 87-88. Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. <u>Coleman</u>, 501 U.S. at 752-53; <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).

A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. The petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (quoting <u>Murray</u>, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>Id.</u>

The conduct of Hurt's postconviction proceedings was governed by the then-current version of Tennessee's Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222. That act specified types of procedural default that might bar a state court from reviewing the merits of a constitutional claim. A one-year statute of limitations governed the filing of petitions. Id. at § 40-30-202. The statute also stated a standard by which state courts were to determine whether to consider the merits of post-conviction claims:

> Upon receipt of a petition in proper form, or upon receipt of an amended petition, the court shall examine the allegations of fact in the petition. If the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the petition shall be dismissed. The order of dismissal shall set forth the court's conclusions of law.

Id. at § 40-30-206(f).[2]

---

[2]   Tenn. Code Ann. § 40-30-206 continued:

(g)   A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

    (1)   The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

    (2)   The failure to present the ground was the result of state action in violation of the federal or state constitution.

(h)   A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

The Sixth Circuit has upheld the dismissal of a Tennessee prisoner's habeas petition as barred by a procedural default caused by failing to file within the Tennessee statute of limitations on postconviction relief. Hannah v. Conley, 49 F.3d 1193, 1194-95 (6th Cir. 1995) (construing first statute and stating "the language of Tenn. Code Ann. § 40-30-102 is mandatory"). In this case, the prisoner's right to file any further state postconviction petition is barred by the one-year statute of limitations and, therefore, she does not have the option of returning to state court to exhaust any claim presented in this § 2254 petition.

B.   <u>Legal Standard for Merits Review</u>

The standard for reviewing a habeas petitioner's constitutional claims on the merits is enunciated in 28 U.S.C. § 2254(d). That section provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This Court must determine whether the state court adjudications of the claims that were decided on the merits were either "contrary to" or an "unreasonable application of" "clearly established"

11

federal law as determined by the United States Supreme Court. This Court must also determine whether the state court decision with respect to each issue was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

      1.   <u>§ 2254(d)(1)</u>

The Supreme Court has issued a series of decisions setting forth the standards for applying § 2254(d)(1).[3] In <u>(Terry)</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 404 (2000), the Supreme Court emphasized that the "contrary to" and "unreasonable application of" clauses should be accorded independent meaning. A state-court decision may be found to violate the "contrary to" clause under two circumstances:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's "contrary to" clause.

<u>Id.</u> at 405-06 (citations omitted); <u>see also</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003);

_____

    [3]    By contrast, there is a dearth of caselaw concerning the standards for applying § 2254(d)(2).

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).[4] The Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." <u>Williams</u>, 529 U.S. at 406; <u>see also</u> <u>id.</u> at 407 ("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

A federal court may grant the writ under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." <u>Cone</u>, 535 U.S. at 694; <u>see also</u> <u>Andrade</u>, 538 U.S. at 75; <u>Williams</u>, 529 U.S. at 409.[5] "[A]n unreasonable application

---

[4]    The Supreme Court has emphasized that this standard "does not require citation of our cases—indeed, it does not even require <u>awareness</u> of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam) (emphasis in original).

[5]    Although the Supreme Court in <u>Williams</u> recognized, <u>in dicta</u>, the possibility that a state-court decision could be found to violate the "unreasonable application" clause when "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," 529 U.S. at 407, the Supreme Court expressed a concern that "the classification does have some problems of precision," <u>id.</u> at 408. The <u>Williams</u> Court concluded that it was not necessary "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)," <u>id.</u> at 408-09, and, to date, the Supreme Court has not had occasion to revisit the issue. <u>See</u> <u>Williams v. Coyle</u>, 260 F.3d 684, 699-700 (6th Cir. 2001), <u>cert. denied</u>, 536 U.S. 947 (2002).

13

of federal law is different from an incorrect application of federal law." <u>Williams</u>, 529 U.S. at 410.[6] "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409.[7]

Moreover, § 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States." This provision "expressly limits the source of law to cases decided by the United States Supreme Court." <u>Harris v. Stovall</u>, 212 F.3d 940, 944 (6th Cir. 2000). As the Sixth Circuit explained:

> This provision marks a significant change from the previous language by referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an

---

[6]    <u>See also</u> <u>Andrade</u>, 538 U.S. at 75 (lower court erred by equating "objectively unreasonable" with "clear error"; "These two standards, however, are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (per curiam) (holding that the lower court "did not observe this distinction [between an incorrect and an unreasonable application of federal law], but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."); <u>Cone</u>, 535 U.S. at 698-99 ("For [a habeas petitioner] to succeed . . . , he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly."); <u>Williams</u>, 529 U.S. at 411 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

[7]    <u>See also</u> <u>Brown v. Payton</u>, 125 S. Ct. 1432, 1442 (2005) ("Even were we to assume the '"relevant state-court decision applied clearly established federal law erroneously or incorrectly,"' . . . there is no basis for further concluding that the application of our precedents was 'objectively unreasonable.'") (citations omitted).

unreasonable application of, clearly established federal law.

Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1999) (citing 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4261.1 (2d ed. Supp. 1998)); see also Harris, 212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d).").  Finally, in determining whether a rule is "clearly established," a habeas court is entitled to rely on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

2.   § 2254(d)(2)

There is almost no case law about the standards for applying § 2254(d)(2), which permits federal courts to grant writs of habeas corpus where the state court's adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The few decisions interpreting this provision have attempted to incorporate the standards applicable to the "unreasonable application" prong of § 2254(d)(1). Thus, the Sixth Circuit stated, in an unpublished decision, that

> a federal habeas court may not grant habeas relief under
> § 2254(d)(2) simply because the court disagrees with a
> state trial court's factual determination. Such relief
> may only be granted if the state court's factual

15

determination was "objectively unreasonable" in light of the evidence presented in the state court proceedings. Moreover . . . , the state court's factual determinations are entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence.

Young v. Hofbauer, 52 Fed. Appx. 234, 236 (6th Cir. Dec. 2, 2002) (citing 28 U.S.C. § 2254(e)(1));[8] see also Stanley v. Lazaroff, 01-4340, 2003 WL 22290187, at *9 (6th Cir. Oct. 3, 2003); Jackson v. Holland, No. 01-5720, 2003 WL 22000285, at *7 (6th Cir. Aug. 21, 2003) ("Though the Supreme Court has not yet interpreted the 'unreasonable determination' clause of § 2254(d)(2), based upon the reasoning in Williams, it appears that a court may grant the writ if the state court's decision is based on an objectively unreasonable determination of the facts in light of the evidence presented during the state court proceeding.") (citing Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000)).

IV.   ANALYSIS OF PETITIONER'S CLAIMS

A.   Ineffective assistance of counsel (Claim 1)

In her first claim for relief, Hurt contends that she received ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments.[9] The factual basis for this claim

_____

[8]    See also Sumner v. Mata, 449 U.S. 539, 546-47 (1981) (applying presumption of correctness to factual determinations of state appellate courts).

[9]    The petition also cites the Eighth Amendment, which has no bearing on this issue. Moreover, although the petition also cites the Tennessee Constitution, this Court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United states." Thus, any claim based on the Tennessee Constitution is not cognizable in federal court.

is not completely clear. The petition asserts that "Attorney
Timothy Williams represented petitioner during her plea to the
court according to court records. Petitioner alleges that she had
multiple counsels at vering [sic] time and that she does not
specifically remember who was her attorney." Petition at p. 9. The
only other recitation of the basis of this claim is the following:

> The appellant submits respectfully that trial counsel was
> ineffective in his representation of her because of his
> failure to visit the petitioner, failure to communicate
> issues to the petitioner, and failure to investigate the
> facts of the case, particularly the mental health the
> petitioner. The Appellant was in custody throughout this
> entire period and was not able to visit her lawyer at his
> office. Thus, she was entirely reliant upon her counsel
> to visit her.

Id. at 12.

        Hurt raised this issue in her postconviction petition,
and the Tennessee Court of Criminal Appeals rejected it on the
merits. Hurt v. State, 2004 WL 2479916, at *2-*4. Thus, Hurt has
exhausted this issue in state court.

        A claim that ineffective assistance of counsel has
deprived a habeas petitioner of her Sixth Amendment right to
counsel is controlled by the standards enunciated in Strickland v.
Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's
> assistance was so defective as to require reversal of a
> conviction or death sentence has two components. First,
> the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors
> so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the deficient performance prejudiced
> the defense. This requires showing that counsel's errors

17

were so serious as to deprive the defendant of a fair
trial, a trial whose result is reliable. Unless a
defendant makes both showings, it cannot be said that the
conviction or death sentence resulted from a breakdown in
the adversary process that renders the result unreliable.

To demonstrate deficient performance by counsel, a
petitioner must demonstrate that "counsel's representation fell
below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act or
> omission of counsel was unreasonable. . . . A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of counsel's
> challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct
> falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the
> presumption that, under the circumstances, the challenged
> action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Coe v. Bell, 161 F.3d 320,
342 (6th Cir. 1998) ("The specifics of what Coe claims an effective
lawyer would have done for him are too voluminous to detail here.
They also largely miss the point: just as (or more) important as
what the lawyer missed is what he did not miss. That is, we focus
on the adequacy or inadequacy of counsel's actual performance, not
counsel's (hindsight) potential for improvement."); Adams v. Jago,
703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been
denied effective assistance by erroneous tactical decisions if, at

18

the time, the decisions would have seemed reasonable to the competent trial attorney'").

A prisoner attacking her conviction bears the burden of establishing that she suffered some prejudice from her attorney's ineffectiveness. See Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. See id. at 697.

The Tennessee Court of Criminal Appeals rejected Hurt's ineffective assistance claim on the merits, stating as follows:

> At the post-conviction hearing, the petitioner testified that trial counsel failed to adequately meet with her and communicate the issues pertaining to her case. Specifically, the petitioner stated that trial counsel only met with her once in jail and, thereafter, only spoke with her briefly in court. She further stated that counsel failed to explain the sentencing procedures and terminology and did not make a recommendation to her as to whether she should accept the prosecutor's offer, plea to the court, or have a jury trial.
>
> The petitioner also testified that trial counsel failed to investigate her mental health background and the way such issues might have affected her case. The petitioner had been hospitalized as a teenager at St. Joseph's and Oakview for suicide attempts. She testified that she did not recall trial counsel ever inquiring into her mental history, although she felt this information could have impacted her defense.
>
> Finally, the petitioner argues that her guilty plea was not knowing and voluntary because she did not understand the consequences of the proceeding and because

she was coerced by trial counsel to make the plea. She avers that counsel did not inform her of the ramifications of her actions and how those actions would impact her sentence. Moreover, the petitioner testified that she based her decision to plea [sic], in large part, on counsel's statement that he would "try to get her fifteen years," and that she relied on this statement to her detriment.

Trial counsel testified at the post-conviction hearing that, prior to trial, he met with the petitioner several times, each time reviewing the facts of the case, the petitioner's statement, and the prosecution's plea offer. He stated that the petitioner was resistant to the prosecution's offer of forty-four years and repeatedly asked him to negotiate a better offer. Counsel further testified that, despite several attempts, he was unable to get an offer the petitioner found acceptable; moreover, she refused to go to trial. He stated that he explained to the petitioner that, if she did not want to go to trial or take the prosecution's offer, the only other option was to plead to the court, which she eventually did. According to trial counsel's testimony, the plea and its consequences were fully explained to the petitioner in multiple meetings. He stated that she came to the conclusion that she would plead guilty on her own, by virtue of eliminating all other options.

Counsel also testified concerning the issue of the petitioner's mental health background. He stated that he spoke with her about her mental condition and that she understood everything that had happened to that point and could recall her prior record. Counsel stated that it was his understanding that a competency hearing had already been conducted on a prior conviction and that she was declared competent at that time. Moreover, he stated that she told him she had not been hospitalized since she was "very young." Therefore, he found no good faith basis for asking for a mental examination and thus did not pursue the avenue of mental incompetence in her defense.

The post-conviction court dismissed the petition at the conclusion of the hearing. The court gave credence to trial counsel's testimony, finding that he had been diligent both in his efforts to prepare the case and in getting the best plea offer available for the petitioner. Moreover, the court found that trial counsel met with the petitioner and explained to her all available options, as well as the consequences of each. As to the inquiry into

mental incompetence, the court found that her mental
health history might have impacted a defense of
diminished capacity but, because she made it clear she
did not want to go to trial, the issue would have never
been heard and was thus irrelevant. Finally, as to the
plea, the court found that the evidence indicated that
trial counsel explained fully the nature and
ramifications of the plea, thus it was voluntary and
knowing. Moreover, her experience with the justice system
weighed in favor of a knowing and voluntary plea; with
seventeen prior arrests and eight convictions, the court
found that she was "not a novice to the justice system,"
and that she understood her rights from prior experience.
Thus, the court dismissed the petition, and the
petitioner filed a timely appeal to this Court.

> . . . .

The petitioner contends that counsel was ineffective
because of his failure to visit the petitioner, failure
to communicate issues to the petitioner, and failure to
investigate the facts of the case, particularly the
mental health of the petitioner. The post-conviction
court accredited the trial counsel's testimony that he
visited with her "several times," each time going over
the various issues of the case and informing the
petitioner of pertinent information. In so doing, the
court found that trial counsel was not ineffective "in
his assistance to her, in negotiating the case, or
talking to her about the case. . . ."

Moreover, as to the inquiry into the mental health
background of the petitioner, the post-conviction court
found that trial counsel's failure to look into the
mental health of the petitioner was not ineffective
assistance. In support of this finding, the court noted
the rational conversations that trial counsel had with
the petitioner, as well as the fact that the petitioner
refused a jury trial, thus making the issue of mental
incompetence moot. The evidence presented does not
preponderate against the findings of fact by the
post-conviction court. The petitioner has failed to show
by clear and convincing evidence that she was prejudiced
by any alleged ineffective assistance of counsel.

Hurt v. State, 2004 WL 2479916, at *2-*4.

An analysis of Hurt's petition is complicated because she has not referred to the legal standards for reviewing habeas claims on the merits. See supra pp. 12-17. Hurt makes no argument that the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). This is "a run-of-the-mill state-court decision applying the correct legal rule from [Strickland v. Washington] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. at 406.

It is not clear whether Hurt contends that the decision of the Tennessee Court of Criminal Appeals was an unreasonable application of Strickland. Although the petition indicates that Hurt disagrees with the state-court decision, Hurt makes no attempt to analyze the state-court's reasoning in light of Strickland. Moreover, Hurt makes no effort to demonstrate that the state-court decision is objectively unreasonable, rather than merely incorrect. Williams, 529 U.S. at 410; see also supra p. 14 n.6.

It is possible that Hurt contends that the decision of the Tennessee Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented at the state-court hearing. 28 U.S.C. § 2254(d)(2). The petitioner fails, however, to demonstrate that the factual findings of the Tennessee Court of Criminal Appeals were objectively unreasonable. Although Hurt has repeated the factual position she

took in state court, she has failed to address, in even a cursory
fashion, the factual findings and analysis of the Tennessee Court
of Criminal Appeals. Accordingly, Hurt has not satisfied her burden
of demonstrating, by clear and convincing evidence, that the state-
court's decision that she failed to establish deficient performance
and prejudice, within the meaning of <u>Strickland</u>, was based on an
unreasonable determination of the facts in light of the evidence
presented at the state-court hearing.

For all of the foregoing reasons, Hurt's first claim is
without merit and is DISMISSED.

B.   <u>The voluntariness of the guilty plea (Claim 2)</u>

In her second claim for relief, Hurt contends that her
guilty plea was not intelligent and voluntary. In particular, she
alleges that, "because counsel did not explain the consequences of
her guilty plea or the sentencing terminology, her plea was
unknowing. . . . The misadvice of Petitioner's attorney and his
failure to explore possible defenses led petitioner to enter an
improvident plea." Petition at 12; <u>see also</u> <u>id.</u> at 13 ("Ms. Hurt
was not adequately informed of the consequences of the proceedings
and was unknowing in her acceptance of her attorneys' advice.").

Hurt raised this claim in her postconviction petition,
and the Tennessee Court of Criminal Appeals rejected it on the
merits. <u>Hurt v. State</u>, 2004 WL 2479916, at *2, *3, *4-*5.
Accordingly, Hurt has exhausted this claim in state court.

23

The Tennessee Court of Criminal Appeals rejected this claim on the merits, stating as follows:

> At the post-conviction hearing, the petitioner testified that trial counsel . . . failed to explain the sentencing procedures and terminology and did not make a recommendation to her as to whether she should accept the prosecutor's offer, plea to the court, or have a jury trial.

> . . . .

> Finally, the petitioner argues that her guilty plea was not knowing and voluntary because she did not understand the consequences of the proceeding and because she was coerced by trial counsel to make the plea. She avers that counsel did not inform her of the ramifications of her actions and how those actions would impact her sentence. Moreover, the petitioner testified that she based her decision to plea, in large part, on counsel's statement that he would "try to get her fifteen years," and that she relied on this statement to her detriment.

> Trial counsel testified at the post-conviction hearing that, prior to trial, he met with the petitioner several times, each time reviewing the facts of the case, the petitioner's statement, and the prosecution's plea offer. He stated that the petitioner was resistant to the prosecution's offer of forty-four years and repeatedly asked him to negotiate a better offer. Counsel further testified that, despite several attempts, he was unable to get an offer the petitioner found acceptable; moreover, she refused to go to trial. He stated that he explained to the petitioner that, if she did not want to go to trial or take the prosecution's offer, the only other option was to plead to the court, which she eventually did. According to trial counsel's testimony, the plea and its consequences were fully explained to the petitioner in multiple meetings. He stated that she came to the conclusion that she would plead guilty on her own, by virtue of eliminating all other options.

> . . . .

> In addition to ineffective assistance of counsel, the petitioner claims that her guilty plea was unknowing and involuntary. A post-conviction petitioner may

successfully attack her conviction when her guilty plea
was unknowing or involuntary. See Tenn. Code Ann. §
40-30-103 (2003); Boykin v. Alabama, 395 U.S. 238, 243 .
. . (1969); State v. Wilson, 31 S.W.3d 189, 194 (Tenn.
2002). A plea is not "voluntary" if it results from
ignorance, misunderstanding, coercion, inducements, or
threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn.
1993). The trial court must determine if the guilty plea
is "knowing" by questioning the defendant to make sure he
or she fully understands the plea and its consequences.
State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999);
Blankenship, 858 S.W.2d at 904. Because the plea must
represent a voluntary and intelligent choice among
alternatives available to the defendant, the trial court
may look at a number of circumstantial factors in making
this determination. Blankenship, 858 S.W.2d at 904. These
factors include: (1) the defendant's relative
intelligence; (2) the defendant's familiarity with
criminal proceedings; (3) whether the defendant was
represented by competent counsel and had the opportunity
to confer with counsel about alternatives; (4) the advice
of counsel and the court about the charges against the
defendant and the penalty to be imposed; and (5) the
defendant's reasons for pleading guilty, including the
desire to avoid a greater penalty in a jury trial. Id. at
904-05.

     The petitioner alleges that, because counsel did not
explain the consequences of her guilty plea or the
sentencing terminology, her plea was unknowing. However,
the post-conviction court credited the testimony of trial
counsel and found that the consequences of the plea were
explained to the petitioner on multiple occasions.
Moreover, the post-conviction court found that she did,
in fact, understand the meaning of the pertinent
terminology, as evidenced by her testimony as the
post-conviction hearing. Further, the record reflects
that the petitioner was thoroughly questioned during the
entry of her guilty plea and answered in a fashion that
left no question as to her knowing act. Therefore, the
answers given by the petitioner in the entry of her
guilty plea are incompatible with her post-conviction
claim. Finally, the court noted the petitioner's prior
history with the court system in making its finding,
stating specifically, "So the Court doesn't find that she
was so much out of the understanding of what happens down
here and the system and people explaining her rights.
She's been explained her rights a number of times in the
past." After reviewing the transcript of the plea

submission hearing and evidence presented at the post-conviction relief hearing, we conclude that the evidence does not preponderate against the post-conviction court's finding that the petitioner was informed of the consequences of her guilty plea. The petitioner has failed to prove by clear and convincing evidence that her guilty pleas were not knowing.

There is likewise no proof contained in the record that counsel coerced the petitioner. As stated above, the post-conviction court found that trial counsel fully explained the consequences of pleading guilty and the rights that were being waived by the petitioner. Moreover, the court adopted trial counsel's version of the facts, maintaining that trial counsel presented the petitioner with the options, but the final decision rested with the petitioner. The post-conviction court stated in its finding that, "She decided to go with the court." The petitioner has failed to demonstrate that she did not knowingly and voluntarily enter her plea of guilty.

Hurt v. State, 2004 WL 2479916, at *2, *3, *4-*5.

As with the issue of ineffective assistance of counsel, Hurt has not attempted to analyze this issue using the legal standards for reviewing habeas claims on the merits. See supra pp. 12-17. Hurt makes no argument that the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). This is "a run-of-the-mill state-court decision applying the correct legal rule from [Boykin v. Alabama] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. at 406.

It is not clear whether Hurt contends that the decision of the Tennessee Court of Criminal Appeals was an unreasonable

26

application of <u>Boykin</u>. Although the petition indicates that Hurt disagrees with the state court decision, Hurt makes no attempt to analyze the state court's reasoning in light of <u>Boykin</u>. Moreover, Hurt makes no effort to demonstrate that the state-court decision is objectively unreasonable, rather than merely incorrect. <u>Williams</u>, 529 U.S. at 410; <u>see also</u> <u>supra</u> p. 14 n.6.

It is possible that Hurt contends that the decision of the Tennessee Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented at the state-court hearing. 28 U.S.C. § 2254(d)(2). However, the petitioner fails to demonstrate that the factual findings of the Tennessee Court of Criminal Appeals were objectively unreasonable. Hurt does not address the state court's factual findings that "the consequences of the plea were explained to [her] on multiple occasions," that "she did, in fact, understand the meaning of the pertinent terminology," that she "was thoroughly questioned [by the trial judge] prior to the entry of her guilty plea and answered in a fashion that left no question as to her knowing act," and that "her experience with the criminal justice system weighed in favor of a knowing and voluntary plea."

Although Hurt apparently contends that the sentence she received was greater than expected, the Tennessee Court of Criminal Appeals also specifically found that she was not coerced into pleading guilty. Hurt does not address the state court's factual findings that "she refused to go to trial," and that "trial counsel

27

presented the petitioner with the options, but the final decision
rested with the petitioner."

Thus, Hurt has not satisfied her burden of demonstrating,
by clear and convincing evidence, that the state court's decision
that she failed to establish that her guilty plea was not knowing
and voluntary, within the meaning of <u>Boykin</u>, was based on an
unreasonable determination of the facts in light of the evidence
presented at the state-court hearing.

For all of the foregoing reasons, Hurt's second claim is
without merit and is DISMISSED.

V.    <u>APPEAL ISSUES</u>

The Court must also determine whether to issue a
certificate of appealability ("COA"). The statute provides:

> (1)  Unless a circuit justice or judge issues a
>      certificate of appealability, an appeal may not be
>      taken to the court of appeals from—
>
>      (A)  the final order in a habeas corpus proceeding
>           in which the detention complained of arises
>           out of process issued by a State court; or
>
>      (B)  the final order in a proceeding under section
>           2255.
>
> (2)  A certificate of appealability may issue under
>      paragraph (1) only if the applicant has made a
>      substantial showing of the denial of a
>      constitutional right.
>
> (3)  The certificate of appealability under paragraph
>      (1) shall indicate which specific issue or issues
>      satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); <u>see also</u> Fed. R. App. P. 22(b); <u>Lyons v. Ohio</u>
<u>Adult Parole Auth.</u>, 105 F.3d 1063, 1073 (6th Cir. 1997) (district

judges may issue certificates of appealability under the AEDPA). No
§ 2254 petitioner may appeal without this certificate.

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000), the
Supreme Court stated that § 2253 is a codification of the standard
announced in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983), which
requires a showing that "reasonable jurists could debate whether
(or, for that matter, agree that) the petition should have been
resolved in a different manner or that the issues presented were
"'adequate to deserve encouragement to proceed further.'" <u>Slack</u>,
529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations
on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require
> a showing that the appeal will succeed. Accordingly, a
> court of appeals should not decline the application of a
> COA merely because it believes the applicant will not
> demonstrate an entitlement to relief. The holding in
> <u>Slack</u> would mean very little if appellate review were
> denied because the prisoner did not convince a judge, or,
> for that matter, three judges, that he or she would
> prevail. It is consistent with § 2253 that a COA will
> issue in some instances where there is no certainty of
> ultimate relief. After all, when a COA is sought, the
> whole premise is that the prisoner "'has already failed
> in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>,
463 U.S. at 893). Thus,

> A prisoner seeking a COA must prove "'something more
> than the absence of frivolity'" or the existence of mere
> "good faith" on his or her part. . . . We do not require
> petitioners to prove, before the issuance of a COA, that
> some jurists would grant the petition for habeas corpus.
> Indeed, a claim can be debatable even though every jurist
> of reason might agree, after the COA has been granted and

29

the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[10]

In this case, there can be no question that any appeal by this petitioner does not deserve attention for the reasons previously stated. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying habeas petitions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a habeas case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a)(3) provides that if a party was permitted to proceed in forma pauperis in the district court, she may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies

_____

[10] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis and supporting affidavit in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if petitioner files a notice of appeal, she must also pay the full $255 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 24ᵗʰ day of October, 2005.

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

31

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 2 in case 2:05-CV-02540 was distributed by fax, mail, or direct printing on October 26, 2005 to the parties listed.

---

Jacqueline Hurt
MARK LUTTRELL CORRECTIONAL CENTER
264130
6000 State Road
Memphis, TN 38134

Honorable Samuel Mays
US DISTRICT COURT